AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Central District of California

United States of America

v.

NICHOLAS HODGES,

Defendant(s)

Case No.

19MJ04991

FILED
CLERK, U.S. DISTRICT COURT
NOV 22 2019
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of November 20, 2019, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 875(c) | Threat by Interstate Communication |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Kyle Weeks, Postal Inspector
Printed name and title

Sworn to before me and signed in my presence.

Date: 11/22/19

ALKA SAGAR
Judge's signature

City and state: Los Angeles, California

Hon. Alka Sagar, U.S. Magistrate Judge
Printed name and title

AUSA: Matthew J. Rosenbaum, X4896

## AFFIDAVIT

I, Kyle Weeks, being duly sworn, declare and state as follows:

### I. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint and arrest warrant against NICHOLAS HODGES ("HODGES") for a violation of 18 U.S.C. § 875(c) (Threat by Interstate Communication).

2. This affidavit is also made in support of an application for a warrant to search the person of HODGES, as described more fully in Attachment A, for evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 875(c) (Threat by Interstate Communication) and 115(a)(1)(B) (Threatening a Federal Official and Employee) (the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

3. The facts set forth in this affidavit are based upon my personal observations; my training and experience; and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and search warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.

## II. BACKGROUND OF INSPECTOR WEEKS

4. I am a United States Postal Inspector ("Postal Inspector") employed by the Los Angeles Division of the United States Postal Inspection Service ("USPIS") and have been so employed since April 2019. I am currently assigned to the Los Angeles Division Mail Theft Team, which investigates crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system, including theft of United States mail, possession of stolen mail, fraud, access device fraud (including credit and debit cards), and identity theft. Previously, I was employed for five years with the United States Secret Service ("USSS"), Los Angeles Field Office. During my time with the USSS, I investigated crimes related to identity theft, access device fraud, wire fraud, and bank fraud.

5. Additionally, I have assisted other agents and inspectors investigating and interviewing suspects that have made threats against the USPS and its employees. I also have attended work place violence ("WPV") training provided by USPIS. Based on prior WPV training, I recognize red flags exhibited by individuals prior to committing violence. Prior to joining USPIS, in my capacity as a Special Agent with the USSS, I assisted agents investigating and interviewing individuals that made threats against the President of the United States and other protectees of the USSS.

### III. SUMMARY OF PROBABLE CAUSE

6. On November 20, 2019, HODGES called a USPS customer service center in Wichita, Kansas and threatened to blow up the Post Office in Reseda, California. On November 21, 2019, I interviewed HODGES, who admitted to calling and making threats the previous day. About one month earlier, on October 26, 2019, HODGES entered a USPS branch office in Reseda, brandished a screwdriver, and threw mail at a USPS employee.

### IV. STATEMENT OF PROBABLE CAUSE

7. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

#### A. THE USPS CALL CENTER REPORTS THREATS MADE BY HODGES

8. On November 20, 2019, a USPS supervisor informed me that HODGES had called a USPS call center and made threats against the Post Office branch located in Reseda, California (the "Reseda Post Office"). Specifically, after complaining about his mail delivery, HODGES stated that he was going to blow up or burn down the Reseda Post Office.

9. On November 21, 2019, I spoke with T.R., a supervisor at the Reseda Post Office. According to T.R., HODGES made the threatening call to the USPS call center while appearing in person in or around the Reseda Post Office, and parts of the call were overheard by at least one employee of the Reseda Post Office. After learning that HODGES was at the scene, T.R. called 911. HODGES left before police arrived.

3

10. The USPS call center informed me that the call had been made by HODGES from the phone number of 213-248-3268. The USPS call center that fielded the call is located in Wichita, Kansas, and the operators at the call center are federal employees.

### B. AN AUDIO RECORDING OF HODGES'S CALL CONFIRMS THE THREAT

11. On November 21, 2019, I reviewed a recording of the phone call HODGES had placed to the USPS call center. Among other things, on the recording:

   a. HODGES stated, referring to the U.S. Post Office in Reseda, California: "I will destroy that shit, ya'all can send mother fucking two god damn carriers on the same god damn route because you're afraid of me, be mother fucking afraid of me because if I can find you guys's shit and blow it up I will, let me find a lighter real quick."

   b. HODGES stated: "I'm very distraught, like I really am at the point where I would want to fucking burn one of you guys's post office buildings. And I have PTSD so if I could find a match and light it I definitely would."

   c. HODGES stated: "If I gotta destroy shit to get my business, I will destroy shit, because I've been too fucking nice, too fucking lenient."

   d. HODGES stated: "I want to burn that damn building down, that shit needs to be done," and "Fuck this Post Office in Reseda, California."

e. The operator asks HODGES for his first and last name and HODGES responds: "Nicholas Hodges." The operator also asks HODGES for his phone number and HODGES responds: "213-248-3268."

### C. VIDEO SHOWS HODGES PREVIOUSLY BRANDISHING A SCREWDRIVER IN THE RESEDA POST OFFICE

12. I contacted the Post Master of the Reseda Post Office. The Post Master stated that the Reseda Post Office staff have had ongoing issues with HODGES regarding mail delivery. The Post Master stated that in October 2019, HODGES had brandished a screwdriver in the Reseda Post Office and flung mail at a supervisor.

13. During my November 21, 2019 conversation with T.R., a supervisor at the Reseda Post Office, T.R. told me that on October 26, 2019, HODGES came into the Reseda Post Office, and confronted T.R. regarding alleged problems with mail delivery to HODGES. According to T.R., HODGES brandished a screwdriver and threw mail at T.R. before punching the door when exiting.

14. I have reviewed surveillance footage taken inside the Reseda Post Office on October 26, 2019. During my review of the footage, I saw HODGES in the Reseda Post Office lobby acting erratically. I also saw HODGES remove a screwdriver from a satchel he was carrying and point it numerous times at T.R. Additionally, I saw HODGES fling objects off the post office counter towards T.R. and kick a display of USPS merchandise as he was exiting.

5

**D. HODGES ADMITS TO THREATENING CALL AND REFUSES TO CONFIRM THAT HE WILL NOT HARM POSTAL EMPLOYEES**

15. On November 21, 2019, USPIS Inspector Clinton Barry and I went to HODGES's residence to attempt to speak with him regarding the threats he had made.

16. While outside HODGES's apartment complex, I called the phone number that HODGES had used to make the threatening call the previous day. A person answered the phone and identified himself as HODGES. I identified myself as an agent with USPIS, and told HODGES that I was outside his apartment and wished to speak with him about issues he was having with the Reseda Post Office. HODGES stated he would be right down.

17. When HODGES came outside to the sidewalk, I again identified myself as an agent with USPIS and asked HODGES to describe his issues with the Reseda Post Office. HODGES stated that the Reseda Post Office does not deliver his mail properly and triggers his PTSD.

18. I asked HODGES if he had called the USPS customer service center and threatened to blow up and burn down the post office. HODGES admitted that he did.

19. Inspector Barry stated to HODGES that we could help him work through his issues with the Reseda Post Office, but we needed to know that HODGES was not going to harm any USPS employees. HODGES deflected Inspector Barry's questions, stating: "This is why I don't like law enforcement, they always want yes or no answers."

20. Inspector Barry insisted on a "yes" or "no" answer from HODGES on his intent to harm USPS employees at least three times, but HODGES again refused to answer the question directly, stating only that he would stop doing business with USPS. When Inspector Barry stated that he really needed to know if HODGES was going to harm USPS employees, HODGES went back into his apartment complex without responding.

### V. TRAINING AND EXPERIENCE ON THREATS CASES

21. Based on my training and experience with USSS and USPIS, I believe that a search of HODGES's person will yield evidence, fruits, or instrumentalities of the Subject Offenses. For example, HODGES will likely have the phone on which he made the threatening call on or near his person. That phone will likely have call records, which would be evidence of his threats through the call center to the Reseda Post Office. I believe that there is also probable cause that that phone and other items on or near HODGES's person may have evidence of the screwdriver incident, other threats he may have made, and plans or means regarding his intent as to those threats.

### VI. TRAINING AND EXPERIENCE ON DIGITAL DEVICES[1]

22. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I

---

[1] As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as paging devices, mobile telephones, and smart phones; digital cameras; gaming consoles; peripheral input/output devices, such

know that the following electronic evidence, inter alia, is often retrievable from digital devices:

    a. Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

    b. Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device. That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them. For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat

---

as keyboards, printers, scanners, monitors, and drives; related communications devices, such as modems, routers, cables, and connections; storage media; and security devices.

programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

   c.   The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it. For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

   d.   Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions. Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed. Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

   23.   Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

   a.   Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above. Also, there are now so many types of digital devices and programs that it is difficult

to bring to a search site all of the specialized manuals, equipment, and personnel that may be required.

    b.    Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

24.    The search warrant requests authorization to use the biometric unlock features of a device, based on the following, which I know from my training, experience, and review of publicly available materials:

    a.    Users may enable a biometric unlock function on some digital devices. To use this function, a user generally displays a physical feature, such as a fingerprint, face, or eye, and the device will automatically unlock if that physical feature matches one the user has stored on the device. To unlock a device enabled with a fingerprint unlock function, a user places one or more of the user's fingers on a device's fingerprint scanner for approximately one second. To unlock a device enabled with a facial, retina, or iris recognition function, the user holds the device in front of the user's face with the user's eyes open for approximately one second.

    b.    In some circumstances, a biometric unlock function will not unlock a device even if enabled, such as when a device has been restarted or inactive, has not been unlocked for a certain period of time (often 48 hours or less), or after a certain number of unsuccessful unlock attempts. Thus, the

opportunity to use a biometric unlock function even on an enabled device may exist for only a short time. I do not know the passcodes of the devices likely to be found in the search.

    c.    Thus, the warrant I am applying for would permit law enforcement personnel to, with respect to any device that appears to have a biometric sensor and falls within the scope of the warrant: (1) depress HODGES's thumb- and/or fingers on the device(s); and (2) hold the device(s) in front of HODGES's face with his eyes open to activate the facial-, iris-, and/or retina-recognition feature.

25. Other than what has been described herein, to my knowledge, the United States has not attempted to obtain this data by other means.

///

///

## VII. CONCLUSION

26. For all of the reasons described above, there is probable cause to believe that NICHOLAS HODGES has committed a violation of 18 U.S.C. § 875(c) (Threat by Interstate Communication). There is also probable cause that the items to be seized described in Attachment B will be found in a search of the person described in Attachment A.

/s/
Kyle Weeks,
Postal Inspector

Subscribed to and sworn before me this 22nd day of November, 2019.

ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE

12